IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN USSACH, Derivatively on Behalf of ATLAS PIPELINE PARTNERS, L.P.,<br><br>                    Plaintiff,<br><br>        v.<br><br>ATLAS ENERGY, INC., EDWARD E. COHEN, JONATHAN Z. COHEN, EUGENE N. DUBAY, TONY C. BANKS, CURTIS D. CLIFFORD, MARTIN RUDOLPH, MICHAEL L. STAINES, and ATLAS PIPELINE PARTNERS, GP LLC<br><br>                    Defendants,<br><br>        -and-<br><br>ATLAS PIPELINE PARTNERS, L.P., a Delaware limited partnership,<br><br>                    Nominal Defendant. | Civil Action No. |

## VERIFIED DERIVATIVE COMPLAINT

Plaintiff Steven Ussach ("Plaintiff") brings this action derivatively on behalf of nominal defendant, Atlas Pipeline Partners, L.P. ("APL" or the "Company") and alleges upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a derivative action brought by a unitholder of APL, on behalf of the Company against Atlas Pipeline Partners, GP LLC ("AP GP"), the members of the AP GP's Managing Board (the "Individual Defendants" herein), and the controlling

unitholder of APL, Atlas Energy, Inc. ("ATLS"), seeking to remedy defendants' violations of state law, including breaches of fiduciary duties that have caused and threaten to cause substantial damage to APL.

2.    On November 8, 2010, APL announced that it had entered into a definitive agreement to sell its crown jewel asset, a 49% stake in Laurel Mountain Midstream, LLC ("Laurel Mountain"), to ATLS for $403 million in cash (the "Laurel Mountain Sale"). ATLS acknowledges in its U.S. Securities and Exchange Commission ("SEC") filings that it controls and has a substantial economic interest in both APL and Atlas Pipeline Holdings, L.P. ("AHD"), which is a limited partnership that owns and operates AP GP. The Laurel Mountain Sale is part of a larger transaction in which ATLS has agreed to sell itself to Chevron Corporation ("Chevron") for approximately $4.3 billion. Chevron, in buying ATLS, wanted to acquire the enormously valuable assets of Laurel Mountain. However, the Laurel Mountain assets were owned by APL, and constituted the most valuable assets of APL. ATLS, in furtherance of its own selfish interest and to the detriment of APL, caused APL to sell the Laurel Mountain assets to ATLS in a conflicted transaction on terms that benefitted ATLS and harmed APL. The Laurel Mountain assets are worth far more than $403 million, and it is not in APL's interest to sell the assets at an undervalued price.

3.    AP GP, the Individual Defendants, and ATLS (as the entity that admittedly controls APL) each owe fiduciary duties of care and loyalty to APL. In entering into this agreement, each of the defendants violated and continues to violate applicable law by directly breaching and/or aiding and abetting the remaining defendants'

2

breaches of their fiduciary duties. Defendants' improper conduct has caused and will continue to cause serious damage to APL.

## JURISDICTION AND VENUE

4.     This shareholder derivative action is brought pursuant to Fed. R. Civ. P. 23.1.

5.     Plaintiff is a citizen of Massachusetts. The defendants are citizen of states other than Massachusetts.

6.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     This action is not brought collusively to confer jurisdiction on this Court which it would not otherwise have. APL is headquartered in this Judicial District, and the Company and the defendants are subject to personal jurisdiction in this Judicial District. Venue is proper here because the claims herein arose from events, actions and failures to act which occurred in this Judicial District.

## THE PARTIES

8.     Plaintiff Steven Ussach is and was at all times relevant hereto, a continuous owner and holder of APL common units. Plaintiff is a citizen of Massachusetts.

9.     Nominal Defendant APL is a Delaware limited partnership with principal executive offices located at 1550 Coraopolis Heights Road, Moon Township, Pennsylvania 15108. APL common units are traded on the New York Stock Exchange under the symbol "APL." APL conducts its operation through two segments: Mid-

3

Continent and Appalachia.  APL's Mid-Continent operations consist of interest and operations in gas gathering systems located in Oklahoma, Kansas and Texas.  APL's Appalachia operations consist primarily of its 49% ownership interest in Laurel Mountain.  APL is a citizen of Pennsylvania.

10.     Defendant AP GP, through its general partner interests in APL, owns a 1.9% general partner interest in the consolidated pipeline operations, through which it manages and effectively controls APL.  AP GP is a wholly-owned subsidiary of ATLS. AP GP is a citizen of Pennsylvania.

11.     Defendant ATLS controls and has a substantial economic interest in APL and AHD.  ATLS is a Delaware corporation with principal executive offices located at 1550 Coraopolis Heights Road, Moon Township, Pennsylvania 15108.  ATLS is a citizen of Pennsylvania.

12.     Defendant Edward E. Cohen ("E. Cohen") has been the Chairman of the managing board of AP GP since its formation in 1999.  E. Cohen was the Chief Executive Officer of AP GP since its formation in 1999 through January 2009.  E. Cohen has been the Chairman of the Board and Chief Executive Officer of Atlas Holdings GP, the general partner of Atlas Pipeline Holdings, GP LLC, since its formation in January 2006. E. Cohen also has been the Chairman of the Board and Chief Executive Officer of ATLS since its organization in 2000 and also served as its President from 2000 to October 2009 when Atlas Energy Resources, LLC became its wholly-owned subsidiary following its merger transaction.  E. Cohen has been the Chairman of the Board and Chief Executive Officer of Atlas Energy Resources, LLC and its manager, Atlas Energy Management, Inc. since their formation in June 2006.  In addition, E. Cohen has been

Chairman of the Board of Directors of Resource America, Inc. since 1990 and was its Chief Executive Officer from 1988 until 2004, and President from 2000 until 2003. He was also Chairman of the Board of Resource Capital Corp. since its formation in September 2005 until November 2009 and a director of TRM Corporation from 1998 to July 2007. Moreover, E. Cohen has served as Chairman of the Board of Brandywine Construction & Management, Inc. since 1994. E. Cohen is a citizen of Florida.

13.    Defendant Jonathan Z. Cohen ("J. Cohen") has been Vice Chairman of the managing board of AP GP since its formation in 1999. J. Cohen has been the Vice Chairman of the Board of Atlas Holdings GP, LLC since its formation in January 2006. J. Cohen also has been the Vice Chairman of the Board of ATLS since its organization in 2000. J. Cohen has been Vice Chairman of the Board of Atlas Energy Resources, LLC and Atlas Energy Management since their formation in June 2006. J. Cohen has been a senior officer of Resource America since 1998, serving as the Chief Executive Officer since 2004, President since 2003 and a director since 2002. J. Cohen has been Chief Executive Officer, President and a director of Resource Capital Corp. since its formation in 2005 and was a trustee and secretary of RAIT Financial Trust from 1997, and its Vice Chairman from 2003, until December 2006. J. Cohen is a son of E. Cohen. J. Cohen is a citizen of New York.

14.    Defendant Eugene N. Dubay ("Dubay") has been President and Chief Executive Officer of AP GP since January 2009. Dubay has served as a member of the managing board of AP GP since October 2008, where he served as an independent member until his appointment as President and Chief Executive Officer. Dubay has been the Chief Executive Officer, President and a Director of Atlas Pipeline Holdings GP,

5

LLC since February 2009. Dubay has been the President of Atlas Pipeline Mid-Continent, LLC since January 2009. Dubay was the Chief Operating Officer of Continental Energy Systems LLC (a successor to SEMCO Energy) from 2002 to January 2009. Dubay has also held positions with ONEOK, Inc. and Southern Union Company. Dubay is a citizen of Pennsylvania.

15. Defendant Michael L. Staines ("Staines") has been a member of AP GP's managing board since 1999. Staines has been the President of Pine Tree Energy Partners, LLC, an energy consulting firm since October 2009. From 2000 to January 2009, Staines was President and Chief Operating Officer of Atlas Pipeline Partners, LP. Staines was an Executive Vice President of Atlas Energy from its formation in 2000 until July 2009. Staines was Senior Vice President of Resource America from 1989 to 2004 and served as a director from 1989 through 2000 and Secretary from 1989 through 1998. Staines is a citizen of Pennsylvania.

16. Defendant Tony C. Banks ("Banks") has been a member of AP GP's managing board since 1999. Banks has been Vice President of Business Development, Performance & Management for FirstEnergy Corporation, a public utility, since March 2007. Banks joined FirstEnergy Solutions, Inc., a subsidiary of FirstEnergy Corporation, in August 2004 as Director of Marketing and in August 2005 became Vice President of Sales & Marketing. From December 2005 to February 2007, Banks was Vice President of Business Development for FirstEnergy. Before joining FirstEnergy, Banks was a consultant to utilities, energy service companies and energy technology firms. From 2000 through 2002, Banks was President of RAI Ventures, Inc. and Chairman of the Board of Optiron Corporation, an energy technology subsidiary of Atlas America. In

addition, Banks served as President of APL during 2000.  He was Chief Executive Officer and President of Atlas America from 1998 through 2000.  Since October 2000, he has served on the board of directors of TRM Corporation, a provider of ATM services. Banks is a citizen of Ohio.

17.     Defendant Curtis D. Clifford ("Clifford") has been a member of AP GP's managing board since 2004.  Clifford has served as Vice President of UGI's deregulated energy subsidiary and operated GASMARK for eight years.  Clifford is a citizen of Pennsylvania.

18.     Defendant Martin Rudolph ("Rudolph") has been a member of AP GP's managing board since 2005.  Rudolph was Managing Partner of RSM McGladrey, Inc. from 1990 until 2001.  Rudolph is a citizen of Pennsylvania.

19.     Defendants E. Cohen, J. Cohen, Dubay, Banks, Clifford, Rudolph and Staines constitute AP GP's managing board and are referred to collectively herein as the "Individual Defendants."

20.     Defendants AP GP, ATLS and the Individual Defendants are referred to collectively herein as the "Defendants."

**DUTIES OF THE DEFENDANTS**

21.     By reason of their positions as officers and/or managing members and fiduciaries of AP GP and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed APL fiduciary obligations of loyalty and due care, and are required to use their utmost ability to control and manage APL in a fair, just, honest and equitable manner.

22.     As the general partner of APL, AP GP owed APL fiduciary obligations of trust, loyalty, good faith and due care, and is required to use its utmost ability to control and manage APL in a fair, just, honest and equitable manner.

23.     As the controller of APL, ATLS owed fiduciary obligations of trust, loyalty, good faith and due care, and is required to use its utmost ability to control and manage APL in a fair, just, honest and equitable manner.

24.     Defendants, consistent with their fiduciary duties, were and are required to act in furtherance of the best interests of APL and not in furtherance of their personal interest or benefit.

25.     Each defendant owes to APL the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company, in the use and preservation of its property and assets, and to uphold the highest obligations of fair dealing.  In addition, the Individual Defendants and AP GP had a duty to promptly disseminate accurate and truthful information with regard to the Company's management and operations so that the market price of the Company's common units would be accurate.

26.     During the relevant period, the Defendants were privy to confidential and proprietary information concerning the Company, its operations, finances, financial condition, and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and directors of AP GP.

27.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of APL, and was at all times acting within the course and scope of such agency.

8

28.    To discharge their duties, Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.

29.    The conduct Defendants complained of herein involves a knowing and culpable violation of their obligations as fiduciaries of APL, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

30.    Defendants breached their duties of loyalty by entering into the Laurel Mountain Sale.

31.    These actions have irreparably damaged APL.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

32.    In committing the wrongful acts alleged herein, the Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

33.    During all times relevant hereto, the Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) favor the interests of ATLS to the detriment of APL; and (ii) failed to ensure that APL will receive maximum value for its interest in Lauren Mountain.  In furtherance of this plan, conspiracy and course of conduct, Defendants collectively and individually took the actions set forth herein.

34.     The purpose and effect of the Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise Defendants' breaches of fiduciary duty.

35.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of its overall contribution to and furtherance of the wrongdoing.

**SUBSTANTIVE ALLEGATIONS**

36.     On November 9, 2010, APL announced the Laurel Mountain Sale.  The Laurel Mountain Sale is part of a larger transaction in which ATLS has agreed to sell itself to Chevron, in a transaction announced the same day.

37.     Chevron, in buying ATLS, wanted to acquire the enormously valuable assets of Laurel Mountain.  However, the Laurel Mountain assets were owned by APL, and constituted the most valuable asset of APL.  According to defendant Dubay, "In Appalachia, we have enormous growth potential in the Marcellus Shale through our Laurel Mountain joint venture. . . ."

38.     The Laurel Mountain assets are worth far more than $403 million, and it is not in APL's interest to sell the assets at an undervalued price.

39.     Laurel Mountain is a natural gas gathering and processing joint venture between Williams Companies Inc. ("Williams") and ALP.  Laurel Mountain currently owns and operates a significant natural gas gathering system active in the Marcellus

10

Shale in western Pennsylvania. The joint venture's anchor customer will be Atlas Energy Resources LLC ("ATN"), which holds a significant acreage position in the Marcellus Shale with more than 550,000 acres, including 274,000 acres in high-potential southwestern Pennsylvania. The joint venture will also offer substantial opportunity to service other produces in the future with large scale, highly reliable systems that the joint venture intends to rapidly expand.

40.     Since the beginning of May 2010, Laurel Mountain has made significant advances in the build-out of the legacy gathering systems, which has resulted in production growth in the second quarter in 2010. The legacy gathering pipeline system consists of approximately 1,800 miles of low-pressure gathering pipelines in Pennsylvania, Ohio, New York and West Virginia. To accommodate the higher volumes and higher flowing pressures of horizontal Marcellus Shale wells, Laurel Mountain is constructing a new gathering system which is ultimately capable of delivering over 1.5 billion cubic feet ("Bcf") per day.

41.     Laurel Mountain has resulted in significant increases to production. ATLS reported that the net average daily production in the Appalachian segment reached a record of approximately 55 million cubic feet of natural gas equivalents ("Mmcfe") per day in the second quarter of 2010, up approximately 21% from the first quarter of 2010, due to strong results from new horizontal Marcellus Shale wells turning into line in the quarter and increased capacity on its legacy gathering system.

42.     As a result of implemented and planned increases to Laurel Mountain's legacy gathering system, production for Laurel Mountain is expected to significantly increase during the remainder of 2010 and years to come. During the second quarter of

2011, Laurel Mountain expects to have in place a third expansion gathering pipeline system, which will have an initial tap capacity of approximately 160 Mmcfe per day.

43. APL's share in Laurel Mountain has had a positive impact on the Company's financial results. For the third quarter of 2010, APL reported earnings of $48.4 million, which was an increase of 56% compared to the third quarter of 2009.

44. The sale of Laurel Mountain comes as a surprise because repeatedly announced that one of the reasons APL entered into a definitive agreement to sell its Elk City facilities to Enbridge Energy Partners, L.P. was to focus on its Laurel Mountain asset. In the press release announcing the sale of the Elk City facilities, defendant Dubay stated, "The transaction provides significant upside for growth, particularly in our Laurel Mountain Midstream asset in the Marcellus Shale[.]"

45. Defendant Dubay has repeatedly stated APL's focus on Laurel Mountain in other APL press releases. According to defendant Dubay, "We are pleased with our solid second-quarter results and the great progress we continue to make in our operating areas. We are focusing on disciplined execution of our strategies and have grown distributable cash flow for three consecutive quarters, and volumes are up over 9% in gas and liquids across our business since the beginning of the year. Further, we are excited about the positive momentum of the company entering the second half of 2010 and into 2011. *The recently announced Elk City transaction will allow us to significantly deleverage the balance sheet, increase liquidity, and de-risk our cash flows by shifting most of our keep-whole exposure to percentage-of-proceeds. Our financial flexibility will allow us to take advantage of our Laurel Mountain Midstream JV in the Marcellus Shale*, and overall, our asset base opportunities look very positive[.]" (Emphasis added).

12

46.     Also, defendant Dubay has stated that, "Over the past several quarters, APL's management team has communicated that it was evaluating strategies that would improve the Partnership's balance sheet, grow its strategic asset base, and allow for the resumption of distributions to our unitholders.  We believe this transaction accomplishes all those objectives and provides a balanced approach to debt reduction.  *The transaction provides significant upside for growth, particularity in our Laurel Mountain Midstream asset in the Marcellus Shale*."  (Emphasis added).

47.     The August 19, 2010 article, *The Largest Natural Gas Discovery in U.S. History . . . and the Company Set to Dominate*, by Alexander Moschina, contains additional insight as to why APL's interest in Laurel Mountain is so valuable:

> Just because a company is selling off its assets doesn't mean disaster is afoot.  Sometimes its just a move to free-up capital for growth projects.  That's the case with Atlas Pipeline Partners, LP (NYSE:APL).
>
> The Pennsylvania gas company recently announced that it's selling its Elk City, Oklahoma facility for $682 million.
>
> That kind of news usually sends investors running for exits, but instead, Atlas shares blasted higher.
>
> You see, the company isn't selling off its Elk City operations in order to tap "emergency" funds.  Instead, its freeing up this huge chunk of cash so it can concentrate of the largest natural gas deposit in the United States . . .
>
> **The Biggest Natural Discover in the U.S. . . . Ever**
>
> In 2002, geologists knew all about the Marcellus Formation.  It's an enormous share deposit that contains 500 trillion cubic feet of natural gas – enough energy to power the U.S. for 200 years.
>
> It wasn't a big story back then because it was impossible to harvest profitable amounts of gas through normal vertical drilling methods.
>
> But that was then.  Now we can drill *horizontall*y.  This grants us access to a wealth of natural gas – and it's exactly what Atlas Pipeline has been doing.

13

**Atlas Grabs a Share of Marcellus Shale**

Laurel Mountain Midstream, LLC, one of Atlas Pipeline's joint ventures, controls over 1,800 miles of natural gas gathering lines in the Marcellus shale formation.

The area, which connects 6,900 gas wells across Pennsylvania and northern West Virginia, produces more than 100 million cubic feet of gas, worth $1 million . . . each and every day.

And right now, the company is building a new pipeline system that will produce five times that amount when finished.  Over 500 million cubic feet of natural gas, eat day.  That's $1.68 billion annually.  Facilities in Africa, the Middle East and Alaska aren't even close to producing that amount in a day.

What's more, Daryl Grieger, regional vice-president and general manager of Laurel Mountain Midstream, says the plants will be in place for 50 years – during which time, Atlas Pipeline will be in prime position as one of the biggest natural gas providers.

It's the single largest natural gas discovery in United States history.  And Atlas' aggressive stake in the formation will greatly increase the company's value in the coming months and years ahead.

48.     In addition to its financial inadequacy, the Laurel Mountain Sale also goes against APL's stated goals, which according APL's operative Second Amended and Restated Agreement of Limited Partnership of Atlas Pipeline Partners, L.P. (the "Limited Partnership Agreement"), is to generate income for distribution to unitholders.

49.     Here, Defendants caused APL to sell its 49% stake in the income producing Laurel Mountain asset for a one-time payment of $403 million.  The Laurel Mountain Sale comes at a time where the implemented and planned increases to Laurel Mountain's legacy gathering system have resulted in Laurel Mountain's production capability and ability to generate income to significantly increase during the remainder of 2010 and years to come.  By selling the 49% stake in Lauren Mountain, Defendants have

14

breached their fiduciary duties to APL by engaging in acts contrary to the purpose of the Limited Partnership Agreement, as the Laurel Mountain Sale will cause a one-time distribution of which the Company will no longer be able to general historical levels of income to its unitholders.

50.     The Limited Partnership Agreement does not insulate the Defendants from liability.  The Limited Partnership Agreement provides that the Defendants' course of action in connection with a conflicted transaction would not constitute a breach of fiduciary duty only if that course of action is (i) approved by Special Approval (as long as the material facts known to the General Partner or any of its Affiliates regarding any proposed transaction were disclosed to the Conflicts Committee at the time it gave its approval), (ii) on terms no less favorable to the Partnership than those generally being provided to or available from unrelated third parties or (iii) fair to the Partnership, taking into account the totality of the relationships between the parties involved (including other transactions that may be particularly favorable or advantageous to the Partnership).

51.     The Defendant's approval of the Laurel Mountain Sale does not qualify for any of the three fiduciary duty carve-outs in the Limited Partnership Agreement. First, while the Laurel Mountain Sale was allegedly approved by a special committee of independent directors, this committee is, in fact, not independent and suffers from disabling conflicts, including being beholden to the Cohen defendants.  Moreover, the special committee did not exercise any true bargaining power and there is no information from which to conclude that the committee could have "just said no" and disapproved the Laurel Mountain Sale which would have derailed the $4.3 billion sale of ATLS, which controls APL.  Second, the terms of the Laurel Mountain Sale are less favorable to APL

than those generally being provided to or available from unrelated third parties.  Indeed, there does not appear to have been an effort to perform a market check or ascertain what a non-conflicted third party would pay for the Laurel Mountain assets.  Third, the Laurel Mountain Sale is not fair and reasonable to APL even when taking into account the totality of the relationships between the parties involved as those relationships do not support an undervalued price for the assets.

52.     Moreover, apart from the three limited fiduciary duty carve-outs, the Limited Partnership Agreement provides that the duties (including fiduciary duties), liabilities and obligations of partners and the administration, dissolution and termination of the partnership shall be governed by the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. Section 17-101, et seq. (the "Delaware Act").

53.     Defendants, in accordance with both the Limited Partnership Agreement and applicable law, have a fiduciary duty to act in good faith in controlling, managing, overseeing and directing the business, operations and management of APL.  Defendants, by reason of their knowledge and recklessness, as alleged herein, failed to act in good faith.

54.     As a result, the Defendants have violated their fiduciary duties of loyalty and good faith to APL under both the Limited Partnership Agreement and the Delaware Act.  In violation of their fiduciary duties, Defendants caused APL to enter into the Laurel Mountain Sale on terms that benefitted and harmed APL.

55.     As a direct and proximate result of the Defendants' breaches of their fiduciary duties, APL has sustained damages for which Defendants should account in this

action, and APL will continue to sustain damage absent the relief Plaintiff seeks in this action.

## DEMAND IS EXCUSED

56.     Plaintiff brings this action derivatively in the right and for the benefit of APL to redress injuries suffered, and to be suffered, by APL as a direct result of the breaches of fiduciary duty by the Defendants.  APL is named as a nominal defendant solely in a derivative capacity.

57.     Plaintiff has not made any demand on APL to institute this action because such a demand would be a futile, wasteful and useless act for all of the following reasons:

a.      AP GP runs APL, is controlled by ATLS, and cannot act with independence and disinterestedness in considering demand;

b.      AP GP is run by the Individual Defendants, each of whom knew of and/or directly benefited from the wrongdoing complained of herein;

c.      The Individual Defendants, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from APL or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties; and

d.      APL has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet AP GP has not sought to hold anyone responsible for that wrongful conduct to attempt to recover for APL any part of the damages APL suffered and will suffer thereby.

17

58.    All of the Individual Defendants have developed debilitating conflicts of interest that prevent AP GP from taking the necessary and proper action on behalf of the Company as requested herein.  The majority of AP GP's Managing Board, are subject to the following prejudicial entanglements that also render demand futile:

a.    Defendants E. Cohen and J. Cohen are members of the boards of APL, APH and ATLS;

b.    Defendant Dubay is President, CEO and a director of AHD and President of Atlas Pipeline Mid-Continent, LLC;

c.    Defendant Banks was the Chairman of the Board of Optiron Corporation, an energy technology subsidiary of ATLS and was also President of Atlas Pipeline Partners GP, LLC.;

d.    Defendant Staines was APL's President and Chief Operating Officer, as well as Executive Vice President of ATLS; and

e.    The Managing Board of AP GP concedes that defendants E. Cohen, J. Cohen, Dubay, and Staines do not satisfy the requirement for independence set out in Section 303A.02 of the rules of the New York Stock Exchange (the "NYSE") including those set forth in Rule 10A-3(b)(1) of the Securities Exchange Act; and

f.    The Individual Defendants are beholden to E. Cohen and J. Cohen, and are therefore incapable of considering a demand.

## COUNT I

### Against AP GP for Breach of Fiduciary Duty

59.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

18

60.     As the general partner of APL, AP GP owed and owes APL fiduciary obligations.  By reason of its fiduciary relationship, AP GP owed and owes APL the highest obligation of good faith, fair dealing, loyalty and due care.

61.     AP GP had actual or constructive knowledge that it had caused or allowed APL to enter into the Laurel Mountain Sale.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the APL's interests.

62.     The Defendant's approval of the Laurel Mountain Sale does not qualify for any of the three fiduciary duty carve-outs in the Limited Partnership Agreement. First, the special committee is not independent, suffers from disabling conflicts and did not exercise any true bargaining power.  Second, the terms of the Laurel Mountain Sale are less favorable to APL than those generally being provided to or available from unrelated third parties.  Third, the Laurel Mountain Sale is not fair and reasonable to APL even when taking into account the totality of the relationships between the parties involved.

63.     Moreover, apart from the three limited fiduciary duty carve-outs, the Limited Partnership Agreement provides that the duties (including fiduciary duties), liabilities and obligations of partners and the administration, dissolution and termination of the partnership shall be governed by the Delaware Act.

64.     As a direct and proximate result of the AP GP's violations of its fiduciary duties to APL under both the Limited Partnership Agreement and the Delaware Act, APL has sustained significant damages.  As a result of the misconduct alleged herein, AP GP is liable to APL.

65.     Plaintiff, on behalf of APL, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Breach of Fiduciary Duty

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants owed and owe APL fiduciary obligations.  By reason of their fiduciary relationships, these defendants owed and owe APL the highest obligation of good faith, fair dealing, loyalty and due care.

68.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

69.     Each of the Individual Defendants had actual or constructive knowledge that they had caused or allowed APL to enter into the Laurel Mountain Sale.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the APL's interests.

70.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, APL has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to APL.

71.     Plaintiff, on behalf of APL, has no adequate remedy at law.

## COUNT III

### Against ATLS for Breach of Fiduciary Duty

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

20

73. As the controller of APL, ATLS owed and owes fiduciary obligations of trust, loyalty, good faith and due care to APL, and is required to use its utmost ability to control and manage APL in a fair, just, honest and equitable manner.

74. ATLS violated and breached its fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

75. ATLS had actual or constructive knowledge that it had caused or allowed APL to enter into the Laurel Mountain Sale. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the APL's interests.

76. As a direct and proximate result of ATLS's failure to perform its fiduciary obligations, APL has sustained significant damages. As a result of the misconduct alleged herein, ATLS is liable to APL.

77. Plaintiff, on behalf of APL, has no adequate remedy at law.

## COUNT IV

### Against ALTS for Unjust Enrichment

78. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79. By its wrongful acts, ATLS was unjustly enriched at the expense of and to the detriment of APL.

80. Plaintiff, on behalf of APL, seeks restitution from ATLS and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by the ATLS from its wrongful conduct and fiduciary breaches.

81. Plaintiff, on behalf of APL, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breach of fiduciary duties;

B.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder;

C.      Preliminarily and permanently enjoining the Defendants from placing their own interests ahead of the interests of the APL;

D.      Declaring the Laurel Mountain Sale void and ordering rescission of the transaction;

E.      Awarding to APL restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

F.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 15, 2010

By:  /s/ Gary F. Lynch
Gary F Lynch (PAID 56887)
CARLSON LYNCH, L.T.D.
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
Telephone: (724) 656-1555
Facsimile: (724) 656-1556
Email: glynch@carlsonlynch.com


**FARUQI & FARUQI, LLP**
Jacob Goldberg
101Greenwood Avenue
Suite 600
Jenkintown, Pennsylvania 19046
Tel: 215-277-5770
Fax: 215-277-5771
Email: jgoldberg@faruqilaw.com


**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
Charles A. Germershausen
560 Sylvan Avenue,
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337
Email: mgardy@gardylaw.com
        jnotis@gardylaw.com
        cgermershausen@gardylaw.com


**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Beth Keller
369 Lexington Avenue, 10th Floor
New York, New York 10016
Tel: 212-983-9330
Fax: 212-983-9331
Email: nfaruqi@faruqilaw.com
        bkeller@faruqilaw.com


*Counsel for Plaintiff*


23